1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   AMAZON.COM, INC., a Delaware corporation,

10                          Plaintiff,                    No. 2:19-cv-523

11          v.                                            COMPLAINT

12   ROY ORON, an individual; JEFFREY GILES,
     an individual; DALE BROWN, an individual;
13   FIRST IMPRESSION INTERACTIVE, INC.,
     an Illinois corporation; and JOHN DOES 1–10,
14
                            Defendants.
15

16                          **I.       INTRODUCTION**

17          1.      Amazon.com, Inc. ("Amazon") is one of the most well-known and trusted

18   companies in the world.  Defendants exploited Amazon's brand to perpetrate a widespread

19   fraud that falsely advertised "work at home opportunities with Amazon."  Through deceptive

20   telemarketing and fraudulent websites, Defendants used high pressure sales tactics to swindle

21   Amazon jobseekers into purchasing Defendants' website services.  These services had no

22   affiliation with Amazon and did not offer victims a chance to work with Amazon.

23          2.      The scheme started with unsolicited phone calls operated by Defendant First

24   Impression Interactive, Inc. ("First Impression")—an Illinois marketing company, run by

25   Defendants Jeffery Giles and Dale Brown, that specializes in "lead" generation for websites

26   (i.e., directing users to visit a particular website).  Among other techniques, First Impression

27   used prerecorded messages that falsely claimed to be recruiting for work-at-home opportunities

COMPLAINT - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

with Amazon.  To entice victims, First Impression's voicemails used Amazon's brand and made a number of false claims, including claiming that the caller was a recruiter, that the positions were limited, and that the positions paid an hourly salary, such as $27.50 per hour.

3.      The purpose of the voicemail was to direct victims to one of a number of domains controlled by First Impression, some of which unlawfully used Amazon's brand, such as amazonprofits.org and amazonwealth.org.  When victims typed these domains into a browser, they were redirected through several domains controlled by an affiliate marketing network based in Utah called Cash Network, LLC ("Cash Network").  First Impression was an affiliate marketer for Cash Network.

4.      Defendant Roy Oron ("Oron"), on behalf of himself, his companies, or his partners, purchased this traffic from Cash Network in order to sell website services. Continuing First Impression's deceit, Oron directed victims to a website that unlawfully and exorbitantly used Amazon's trademarks, images of Amazon CEO Jeff Bezos, fake quotes attributed to Mr. Bezos, fictitious testimonials and social media postings, and false or misleading statements about Defendants' connection to Amazon.  Oron oftentimes referred to his scheme as the "Amazon Cash Websites."  A partial screenshot of Oron's website is below:



COMPLAINT - 2

5.      Defendants' unlawful tactics pressured and deceived victims into purchasing services from Oron that had no connection to Amazon.  Victims looking to work with Amazon, instead, received website services that failed entirely to deliver the "work at home opportunity with Amazon" Defendants promised.

6.      Amazon has spent considerable resources investigating Defendants' unlawful advertising scheme in order to hold Defendants accountable for their unlawful actions and to prevent additional jobseekers from being victimized.

## II.      PARTIES

7.      Amazon is a Delaware corporation with its principal place of business in Seattle, Washington.  Through its subsidiaries, Amazon owns and operates the Amazon.com website, equivalent international websites, and Amazon Web Services ("AWS").

8.      Oron is an individual who, on information and belief, resides in Israel.  On information and belief, Oron operates under several business names, including CPA 37, Clickomy, and Click Leaders.  On information and belief, Oron owned, operated, and financially benefitted from the unlawful scheme alleged in this Complaint.  Oron is directly liable to Amazon for the damages alleged in this Complaint.  Alternatively, Oron had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.  As such, Oron is subject to liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

9.      Jeffrey Giles is an individual who resides in Illinois, and owns First Impression. On information and belief, Giles owned, operated, and financially benefitted from the unlawful scheme alleged in this Complaint.  Giles is directly liable to Amazon for the damages alleged in this Complaint.  Alternatively, Giles had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that

COMPLAINT - 3

wrongful conduct.  As such, Giles is subject to liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

10.     Dale Brown is an individual who resides in Illinois, and is an officer of First Impression.  On information and belief, Brown operated and financially benefitted from the unlawful scheme alleged in this Complaint.  Brown is directly liable to Amazon for the damages alleged in this Complaint.  Alternatively, Brown had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derived a direct financial benefit from that wrongful conduct.  As such, Brown is subject to liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

11.     First Impression is an Illinois corporation with its principal place of business in Illinois.  On information and belief, First Impression is owned by Giles, and Brown serves as one of the company's officers.  As alleged in this Complaint, First Impression served as an affiliate marketer for Cash Network, and in that capacity, First Impression sourced and sold marketing "leads" through the unlawful use of Amazon's brand.  As such, First Impression is directly liable to Amazon for the damages alleged in this Complaint, or alternatively, is secondarily liable for these damages under principles of vicarious liability and/or contributory infringement.

12.     The true identities of John Does 1–10 ("Doe Defendants") are not presently known to Amazon.  On information and belief, Doe Defendants are individuals and entities working in active concert to knowingly and willfully run the scheme alleged in this Complaint, including by using Amazon's trademarks and brand to deceive victims.

### III.     JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over Amazon's claims for trademark infringement (15 U.S.C. § 1114), violations of Section 43(a) of the Lanham Act (15 U.S.C. §

COMPLAINT - 4

1125(a)), trademark dilution (15 U.S.C. § 1125(c)), and cybersquatting (15 U.S.C. § 1125(d)) pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

14.     The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to this District, and Amazon's claims arise from those activities.  On information and belief, Defendants' scheme specifically targets people in this District, Defendants' websites actively solicit interaction from victims in this District, and Defendants made use of services provided by AWS (which is located in this District).

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Western District of Washington.

16.     Pursuant to Local Civil Rule 3(d), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Amazon resides, (b) the injuries giving rise to suit occurred, and (c) Defendants directed their unlawful conduct.

## IV.     FACTS

### A.     Amazon Is A Trusted Brand

17.     Amazon is a highly trusted brand that is inextricably linked with online sales and services.

18.     One of many services offered by Amazon is called Amazon Cash.[1]  Amazon launched its Amazon Cash service in April 2017 to meet the needs of cash-based customers. Amazon Cash allows customers to make purchases on Amazon.com without a credit card or bank account.  Customers simply present a barcode or phone number associated with their Amazon account at participating brick-and-mortar retail locations and pay the desired amount in cash.  After payment, an Amazon.com Gift Card is automatically applied to the customer's Amazon.com Gift Card balance and available for use on Amazon.com.  Amazon has partnered

---

[1] As discussed in the following sections, Defendants oftentimes described their services using the "Amazon Cash" name.

COMPLAINT - 5

with numerous retailers across the country so that Amazon Cash is now supported at thousands of locations nationwide.

19.     Amazon exclusively owns numerous U.S. trademark registrations and pending applications.  These trademarks are a critical component of consumer's ability to readily identify Amazon products and services.

20.     As alleged in this Complaint, the following trademarks and service marks (collectively "Amazon Trademarks") were unlawfully used to further Defendants' scheme:

| Mark | Registration No. (International Classes) |
|---|---|
| AMAZON | 2,657,226 (Int. Cl. 42)<br>2,738,837 (Int. Cl. 38)<br>2,738,838 (Int. Cl. 39)<br>2,832,943 (Int. Cl. 35)<br>2,857,590 (Int. Cl. 9)<br>3,868,195 (Int. Cl. 45)<br>4,171,964 (Int. Cl. 9)<br>4,533,716 (Int. Cl. 2)<br>4,656,529 (Int. Cl. 18)<br>4,907,371 (Int. Cls.: 35, 41, and 42)<br>5,102,687 (Int. Cl. 18)<br>5,281,455 (Int. Cl. 36) |
| AMAZON.COM | 2,078,496 (Int. Cl. 42)<br>2,167,345 (Int. Cl. 35)<br>2,559,936 (Int. Cl. 35, 36, 42)<br>2,633,281 (Int. Cl. 38)<br>2,837,138 (Int. Cl. 35)<br>2,903,561 (Int. Cls: 18 and 28)<br>3,411,872 (Int. Cl. 36)<br>4,608,470 (Int. Cl. 45) |
| amazon | 4,171,965 (Int. Cl. 9)<br>5,038,752 (Int. Cl. 25) |

COMPLAINT - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

| amazon.com | 2,684,128 (Int. Cl. 38)<br>2,696,140 (Int. Cl. 42)<br>2,789,101 (Int. Cl. 35)<br>2,884,547 (Int. Cl. 39)<br>2,970,898 (Int. Cl. 41)<br>3,414,814 (Int. Cl. 36) |
|---|---|

21.     The Amazon Trademarks have been used exclusively and continuously by Amazon, and have never been abandoned.  The above U.S. registrations for the Amazon Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  The registrations for the Amazon Trademarks constitute prima facie evidence of their validity and of Amazon's exclusive right to use the Amazon Trademarks pursuant to 15 U.S.C. § 1057(b).

**B.    Defendants Defrauded Victims By Advertising Phony Work at Home Opportunities with Amazon**

22.     As outlined below, Defendants' unlawful advertising scheme had four main stages.  Each stage played a critical role in Defendants' unlawful activities, and taken together, abused Amazon's brand to swindle victims who were eager to work for Amazon.

**1.    Stage 1:  First Impression Conducted a Widespread and Unlawful Telemarketing Operation to Lure Victims**

23.     On information and belief, First Impression contracted with Cash Network (an online marketing company) to become an affiliate marketer for Cash Network.

24.     On information and belief, as an affiliate marketer for Cash Network, First Impression agreed to generate "leads" to sell to Cash Network.  The term "lead" generally means an internet user who can be referred to another website.  Here, First Impression specifically agreed to source internet users to sell to Cash Network.

25.     To source these users, First Impression operated a systematic and widespread telemarketing operation that relied on prerecorded messages using Amazon's name to mislead potential victims into believing the caller was affiliated with Amazon.

COMPLAINT - 7

26.     First Impression placed unsolicited phone calls to victims and left prerecorded voicemail messages.  These voicemails directly marketed a fake employment position with Amazon.  The voicemails also generally provided a job description, pay range, and stated that a limited number of positions were available.  In their voicemails, Defendants oftentimes claimed to be a recruiter named "Sarah."  All of these representations were intentionally false or misleading and were made without Amazon's authorization.

27.     For example, on October 31, 2018, First Impression placed an unsolicited call to a victim and left a prerecorded message stating:

> Hi.  This is Sarah with amazonrecruiter.org.  I saw your resume online, and I'm calling about an online opportunity working with Amazon.  You simply list product reviews online in your spare time.  Hourly pay guarantee is $17 up to $32.  We need to fill 23 spots this month, so please register today at amazonrecruiter.org.  That's amazonrecruiter-dot-o-r-g.  Thank you.

28.     Among other falsities, Defendants did not review resumes online, did not actually have a position that offered hourly pay (let alone "guarantee[d]" hourly pay) and did not have any monthly spots to fill.  Further, Defendants use of the phrase "working with Amazon" was purposefully designed to mislead victims into believing a job opportunity existed with Amazon.

29.     As another example, on or near December 5, 2018, First Impression placed another unsolicited call to a victim and left a prerecorded message stating:

> This is Sarah calling with amazonprofts.org.  We need people in your area to work with Amazon from home.  Starting pay is $27.50 per hour.  Sign up at amazonprofits.org.  That's amazonprofits-dot-o-r-g.

30.     Like the first example, Defendants did not actually have a position that offered hourly pay, and Defendants' use of the phrase "work with Amazon" was intended to mislead victims into believing a job opportunity existed with Amazon.

31.     On information and belief, First Impression also operated an automated recording that claimed to be the "Amazon Associate Hotline."  First Impression placed

COMPLAINT - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
206.622.3150 main · 206.757.7700 fax

unsolicited calls that did not leave a message.[2]  When victims returned First Impression's call, they received a voicemail greeting that claimed to be the "Amazon Associate Hotline" and falsely advertised an opportunity to "partner with Amazon."  The recording prompted victims to leave their name and phone number.  First Impression returned victims' calls with an automated message that was substantially similar to the ones described above.  Among other false statements, the recording claimed to be from a recruiter, provided a job description and pay range, and stated that a limited number of positions were available.[3]

32.     The purpose of First Impression's prerecorded messages was to direct victims to websites controlled by Defendants where victims could purportedly register for fake job opportunities with Amazon.  To do this, Defendants' voicemail directed the victim to a specific website domain.

33.     Defendants used different domains in their voicemail messages, but there was a clear pattern in the registration, hosting, and URL structure of these domains.  First Impression is known to have used at least the following ten domains in their scheme:  amazoncash.org; amazonrecruiter.org; amazonishiring.org; amazonprofits.org; amazonwealth.org; amzjobs.org; hometyping.org; retailpay.org; internetprofit.org; and internetcareer.org (collectively "Voicemail Domains").  All of these Voicemail Domains were registered between April 2018 and October 2018 through domain registrar GoDaddy.com LLC, and were hosted at one time by zColo, a wholly owned subsidiary of Zayo Group Holdings, Inc.  Three—amazoncash.org, amazonprofits.org, and amazonwealth.org—used network services from Cloudflare, Inc.  The registrant of the Voicemail Domains used the anonymizing service Domains By Proxy, LLC to hide the registrant's identifying information from public view.

---

[2] One of the phone numbers associated with this voicemail greeting, 208-577-6814, is administered by Vail Systems, Inc.
[3] One of the phone numbers associated with this automated message, 208-417-8844, is administered by Bandwidth, Inc.

COMPLAINT - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

2. **Stage 2:  First Impression Referred Traffic to Cash Network Which Then Directed It to Oron**

34.     When a victim entered one of the Voicemail Domains into a browser believing it to lead to an Amazon job opportunity, First Impression redirected the victim to domains controlled by Cash Network.  On information and belief, Cash Network paid First Impression for the referred victims.

35.     Cash Network operates an online advertising network that helps advertisers source traffic for their websites.  As part of its business, Cash Network operates a "private . . . referral only network" of affiliate marketers who are responsible for sourcing the traffic Cash Network sells to advertisers.  Cash Network claims that it accepts affiliates only on a referral basis, and that an affiliate can only register through a "valid referral link."

36.     On information and belief, First Impression is an affiliate marketer for Cash Network and was one of the affiliates Cash Network invited to join its network.

37.     First Impression directed victims from the Voicemail Domains to either citlis.com or jocisc.com.[4]  Both of these domains redirected the victim through ansmitt.com, which in turn redirected the user to ttxx1.com.  Users do not typically see these four domains (collectively "Redirect Domains") because the browser would not render content returned from these hosts; they are simply a means of directing traffic and collecting data.

38.     All four of these Redirect Domains used the generic top-level domain ".com," and were registered between December 2016 and November 2017 through domain registrar NameCheap, Inc.

39.     Three of the Redirect Domains—citlis.com, jocisc.com, and ansmitt.com—used network services provided by Cloudflare, Inc.  One of the Redirect Domains—ttxx1.com—uses services provided by CAKE (getcake.com), which is owned and operated by Accelerize, Inc. and provides mobile advertising services.

---

[4] Over time, First Impression also sent victims to other domains controlled by Cash Network, including, for example, weticil.com and utrome.com, which were similarly used to direct traffic.

COMPLAINT - 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

3.      **Stage 3:  Roy Oron Purchased Traffic from Cash Network to Advertise a Phony "Work at Home Opportunity with Amazon"**

40.      From ttxx1.com—the last of the Redirect Domains—Cash Network directed victims to a website controlled by Oron.  On information and belief, Oron paid Cash Network for the referred victims.

41.      On information and belief, Oron resides in Israel.  Oron is connected to a number of online marketing companies, including clickomy.com and clickleaders.com.  Both websites for those companies are nearly identical, and both falsely claim that they have "partnered with" Amazon and use the Amazon Trademarks on their websites.  Oron used the company name "CPA 37" when working with Cash Network to perpetrate the scheme alleged in this Complaint.

42.      After being referred through Cash Network's Redirect Domains, victims arrived at Oron's landing page ("Landing Page").  A true and correct screenshot of one version of this Landing Page is attached to this Complaint as Exhibit 1.

43.      Oron rendered the Landing Page on domains with the generic top-level domain ".pw."  For example, Oron has used at least the following six domains in the scheme: newspagetime.pw (created on September 2, 2018), newspagestimes.pw (created on September 17, 2018), myupdatenewspages.pw (created on October 3, 2018), profitsnews.pw (created on October 15, 2018), myrealupdatenews.pw (created on October 18, 2018), and rpprofitsonnews.pw (created on November 28, 2018).  These domains were registered through the registrar NameCheap, Inc.

44.      As described in further detail below, the Landing Page used the Amazon Trademarks, other indications of Amazon's brand, and false or misleading statements relating to Amazon to deceive victims into believing that the Landing Page was affiliated with Amazon.

45.      The Landing Page worked in concert with the false statements made in First Impression's voicemails, and First Impression's use of Amazon's brand in some of the Redirect

COMPLAINT - 11

1

2

Domains.  Both the voicemails and the Landing Page falsely claimed to offer jobs with
Amazon in an effort to deceive victims.

3

4

46.     A screenshot of the first section of the Landing Page is below:



47.     Among other tactics, the Landing Page prominently displayed—at the top of the
website—an image of Amazon's Chief Executive Officer, Jeff Bezos, standing in front of
Amazon's logo.  The words "Work From Home" were intentionally added just below the
Amazon Trademark.

48.     Above the infringing image, the Landing Page displayed the headline "NEW –
Work at Home Opportunity with Amazon" followed by the victim's location.  The location was
obtained from the victim's IP address used to connect to the Landing Page.  For example, if the
victim used an IP Address from Tacoma, Washington, the headline read, "NEW – Work at
Home Opportunity with Amazon in United States Tacoma."  The Landing Page used this tactic

COMPLAINT - 12

to further deceive victims into believing a "Work at Home Opportunity with Amazon" existed in their area—just as First Impression's voicemails suggested.

49.     The top of the Landing Page oftentimes displayed a header that intentionally misled victims into believing Defendants' Landing Page originated with or was affiliated with Amazon.  While this header varied, it often contained the title "Amazon Cash Websites," a screenshot of which is below:



50.     The wording from the header was also repeated throughout the Landing Page. For example, the right side of the Landing Page contained an image of a mobile phone that displayed an Amazon.com webpage, including the Amazon Trademarks and other indications of Amazon's brand from that page.  Below the image was a deceptive message that incorporated the header, and in this example, read: "This is a monumental opportunity! You can start making money from the palm of your hand using Amazon on mobile phones partnered with tools from the **Amazon Cash Websites**." (emphasis added).  Below is a screenshot of this image and message:



COMPLAINT - 13

51.     Also on the right side of the Landing Page was an image of a person holding a handful of cash and the message:  "Follow the steps below to **start working for Amazon** immediately!" (emphasis added).  A screenshot of one version of this image is below:



52.     Further down, the Landing Page displayed a second image of Amazon CEO Jeff Bezos next to one of the Amazon Trademarks, along with the heading "WE NEED YOUR HELP," which was falsely attributed as a quote from Mr. Bezos.  A screenshot of this quote and image is below:



COMPLAINT - 14

53.     The Landing Page also included additional statements intended to deceive victims into believing the website was advertising opportunities to work for Amazon.  These statements included numerous references to a phony work-from-home "program with Amazon."  They also included discussions of Amazon's financial performance and the ability for victims to "join" Amazon's success through the offer on the Landing Page.  Such statements included, for example, "Amazon market value soared above $685 billion, making the Jeff Bezos-led giant worth more than Microsoft for the first time ever. . . . JOIN the success NOW, before it's too late!"

54.     At the bottom of the Landing Page—in tiny font—was a purported disclaimer that stated (among other things):  "We are not affiliated in any way with Amazon . . . and all such trademarks on this website, whether registered or not, are the property of their respective owners."  This language demonstrates Oron's knowledge of Amazon's exclusive right to use the Amazon Trademarks, and admits that Oron lacked any right or authority to use them.  This disclaimer also demonstrates that Oron's design, display, and use of the Amazon Trademarks and other indications of Amazon's brand on the Landing Page was intentional and willful.

55.     Notwithstanding Oron's ineffective disclaimer, the rest of the Landing Page was expressly designed and intended to give victims the false impression that it originated with, was affiliated with, or was sponsored by Amazon.  It was also intentionally designed to deceive victims into believing that purchasing Oron's services would lead consumers to employment with Amazon.

### 4.     Stage 4:  Roy Oron Used the Landing Page to Deceive Victims into Purchasing Unnecessary Services

56.     The purpose of the Landing Page—and Oron's use of Amazon's brand—was to entice victims to click on the Landing Page's links and ultimately purchase Oron's services.

57.     By linking from the Landing Page—which heavily used the Amazon Trademarks and other indications of Amazon's brand—Oron attempted to deceive users into

COMPLAINT - 15

believing that his services were connected with Amazon.  First Impression's use of Amazon's brand in the original voicemail messages to source victims only furthered this deception.

58.    The Landing Page marketed the available services as "a small enrollment fee" that "covers the processing costs and also separates the people who are *serious* about working with this huge network through this program."  The Landing Page further stated, "If you're lucky enough to receive a kit, this will simply add as much as $14,000 to your monthly income while working as much or as little as you want."

59.    When a victim clicked on any hyperlink on the Landing Page, the victim was taken to another webpage controlled by Oron that displayed the headline "Want to make $500 a Day?"  The page directed the victim to enter his or her name and contact information.  A screenshot of a version of the page is below:



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

60.     This "Make $500 a Day" webpage was rendered on domains such as systemmswps.pw and systemmswv2.pw.  Both of these domains were created on September 2, 2018, and registered through the domain registrar NameCheap, Inc.

61.     Upon entering a name, email address, and phone number, the website rendered a video titled "Do You Want To Make $500 a Day?" which claimed, among other things, that victims could "immediately" "earn approximately $500 per day."  This video is hosted by YouTube, and was uploaded by a user named "null null" on April 9, 2018.  As of February 28, 2019, this video had been viewed 34,687 times.

62.     Oron's "Make $500 a Day" webpage linked to Oron's "Terms of Service," which provided:  "If you have any questions about the Agreement or about the practices of Markenark please feel free to contact us at https://support.easykits.org."  The domain easykits.org was created on March 18, 2012 and registered through domain registrar GoDaddy.com LLC.

63.     Upon the conclusion of the video titled "Do You Want To Make $500 a Day?" an image directed users to purchase Oron's services.  This image used high-pressure sales tactics, including offering a purported "discount" and stating the service was in "high demand." A screenshot of this image is below:



COMPLAINT - 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

64.     When the victim clicked on this image, the victim was directed to a webpage where the victim was required to provide personal payment information.  This website was also controlled by Oron.  A screenshot of the payment page is below:



65.     Oron rendered this payment page on the domain secureforms.org.  This domain was created on April 17, 2016, and was registered through the registrar Mesh Digital Ltd., which is owned by GoDaddy.com LLC.  The registrant for secureforms.org used the anonymizing service Identity Protection Service to hide the registrant's identifying information from public view.

COMPLAINT - 18

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

66.     An investigator for Amazon test purchased Oron's services through secureforms.org.  Amazon's investigator used a credit card issued by JPMorgan Chase, and the merchant for Amazon's test purchase is listed as "karenvidtut 8666982569."  The domain karenvidtut.com was created on May 7, 2018, and was registered through the registrar NameCheap, Inc.  The domain karenvidtut.com was hosted by an account connected to Oron.  The phone number contained in the merchant account description, 866-698-2569, is administered by ATL Communications, Inc.

67.     After clicking "Submit My Secure Order" on the payment page, the victim was redirected to a webpage that promised additional secrets for a payment of $297.  Oron rendered this webpage using the domain mswup.com.  The domain mswup.com was created on July 18, 2018, and registered through domain registrar NameCheap, Inc.

68.     After Amazon test purchased Oron's services, the investigator received an email from support@easykits.org using a service offered by SendGrid, Inc.  The email purports to be from "Money Making Website," and provides a "customer support" phone number of 1-888-793-3429.  The email is signed "systemsmsw.com," which is a domain that was hosted by an account connected to Oron.  The domain systemsmsw.com was created on August 9, 2018, and registered through NameCheap, Inc.  The phone number 888-793-3429 is administered by Bandwidth, Inc.

69.     Despite Oron's extensive use of the Amazon Trademarks and false or misleading statements about Defendants' connection to Amazon, Defendants' services do not originate with, are not sponsored or approved by, and are not otherwise affiliated with, Amazon.  Defendants are not offering any legitimate opportunities to "work for" or "work with" Amazon—as they repeatedly claimed.  Instead, Defendants are illegally using Amazon's brand to deceive victims into purchasing Defendants' own services, thereby collecting money and personal information under false pretenses.

COMPLAINT - 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

# V.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (AGAINST ROY ORON)

### Trademark Infringement (15 U.S.C. § 1114)

70.   Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

71.   Defendant's activities infringe the Amazon Trademarks.

72.   Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

73.   Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, users, and the public to signify, products and services from Amazon.

74.   Defendant's Landing Page uses the Amazon Trademarks in commerce in a manner that is intended to cause confusion, mistake, or deception as to source, origin, or authenticity of Defendant's website.

75.   Further, Defendant's activities are likely to lead the public to conclude, incorrectly, that Defendant's websites and product offerings originate with or are authorized by Amazon, thereby harming Amazon and innocent victims.

76.   At a minimum, Defendant acted with willful blindness to, or in reckless disregard of, his authority to use the Amazon Trademarks and the confusion that the use of those trademarks had on consumers as to the source, sponsorship, affiliation, or approval by Amazon of Defendant's websites and products.

77.   Defendant is subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

78.   As a result of Defendant's wrongful conduct, Amazon is entitled to recover its

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

actual damages, Defendant's profits attributable to the infringement, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendant to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendant.  Alternatively, Amazon is entitled to statutory damages under 15 U.S.C. § 1117(c).

79.    Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  Amazon has no adequate remedy at law for Defendant's wrongful conduct because, among other things: (a) the Amazon Trademarks are unique and valuable property; (b) in addition to the significant harm that Defendants have caused to innocent jobseekers, Defendant's infringement constitutes harm to Amazon's reputation and goodwill such that Amazon could not be made whole by any monetary award; (c) if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing websites; and (d) Defendant's wrongful conduct, and the resulting harm to Amazon, is continuing.

## SECOND CAUSE OF ACTION

### (AGAINST ROY ORON)

**False Designation of Origin and False Advertising (15 U.S.C. § 1125(a))**

80.    Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

81.    Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

82.    Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify products and services from Amazon.

83.    Amazon has also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images (collectively, "Amazon designs") for its websites.

COMPLAINT - 21

84.     Defendant's wrongful conduct includes the use of Amazon's trademarks, name, and/or imitation designs (specifically displays, logos, icons, and/or graphic designs virtually indistinguishable from the Amazon designs) in connection with Defendant's commercial advertising or promotion.

85.     Defendant has used, and continues to use, Amazon's trademarks, name, and/or imitation designs to deceive people visiting his webpages.  On information and belief, Defendant's wrongful conduct misleads and confuses those people as to the origin and authenticity of the goods and services advertised, marketed, offered, or distributed in connection with Amazon's trademarks, name, and imitation visual designs, and wrongfully trades upon Amazon's goodwill and business reputation.  Defendant's conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false advertising, all in violation of 15 U.S.C. § 1125(a).

86.     Defendant's acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

87.     Defendant is subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

88.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  In addition to the significant harm that Defendants have caused to innocent jobseekers, Defendant's acts have caused irreparable injury to Amazon.  The injury to Amazon is, and continues to be, ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

89.     As a result of Defendant's wrongful conduct, Amazon is entitled to recover its actual damages, Defendant's profits, and treble damages and attorney fees pursuant to 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

U.S.C. § 1117(a)–(b).  The amount of money due from Defendant to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendant.

## THIRD CAUSE OF ACTION

### (AGAINST ROY ORON)

### Trademark Dilution (15 U.S.C. § 1125(c))

90.     Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

91.     Amazon has exclusively and continuously promoted and used the Amazon Trademarks.  As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive, and well-known symbols of Amazon—well before the Defendant began using the Amazon Trademarks in association with his goods or services unaffiliated with Amazon through the Defendant's illegal use and infringement of the Amazon Trademarks.

92.     The actions of the Defendant including, but not limited to, his unauthorized use of the described Amazon Trademarks in commerce to deceive users into believing Defendant's websites are affiliated with Amazon are likely to cause dilution of the Amazon Trademarks by blurring and tarnishment in violation of 15 U.S.C. § 1125(c).

93.     As a result of Defendant's willful conduct, Amazon is entitled to recover its actual damages, Defendant's profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a).

94.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  In addition to the significant harm that Defendants have caused to innocent jobseekers, Defendant's acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

## FOURTH CAUSE OF ACTION

### (AGAINST FIRST IMPRESSION, JEFFREY GILES, AND DALE BROWN)

### False Advertising (15 U.S.C. § 1125(a))

95.     Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

96.     Amazon advertises, markets, and distributes its products and services using the Amazon Trademarks, and it uses these trademarks to distinguish its products and services from the products and services of others in the same or related fields.

97.     Because of Amazon's long, continuous, and exclusive use of the Amazon Trademarks, they have come to mean, and are understood by customers, end users, and the public to signify, products and services from Amazon.

98.     Amazon has also designed distinctive and aesthetically pleasing displays, logos, icons, and graphic images (collectively, "Amazon designs") for its websites.

99.     Defendants' wrongful conduct includes the use of Amazon's name in connection with Defendants' commercial advertising or promotion.

100.     Defendants have used, and continue to use, Amazon's name to deceive customers.  On information and belief, Defendants' wrongful conduct misleads and confuses the public as to the origin and authenticity of Defendants' services and wrongfully trades upon Amazon's goodwill and business reputation.  Defendants' conduct constitutes false advertising, in violation of 15 U.S.C. § 1125(a).

101.     Defendants' acts constitute willful false statements in connection with goods and/or services distributed in interstate commerce, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

102.     Defendants are subject to liability for the wrongful conduct alleged herein, both directly and under various principles of secondary liability, including without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

103.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for

COMPLAINT - 24

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

Relief below.  In addition to the significant harm that Defendants have caused to innocent jobseekers, Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

104.    As a result of Defendants' wrongful conduct, Amazon is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117(a)–(b).  The amount of money due from Defendants to Amazon is unknown to Amazon and cannot be ascertained without a detailed accounting by Defendants.

## FIFTH CAUSE OF ACTION

**(AGAINST FIRST IMPRESSION, JEFFREY GILES, AND DALE BROWN)**

**Cybersquatting (15 U.S.C. § 1125(d))**

105.    Amazon incorporates by reference the factual allegations contained in Sections I–IV as though set forth herein.

106.    Amazon has exclusively and continuously promoted and used the Amazon Trademarks.  As one of the world's most well-known technology companies, the Amazon Trademarks have become famous, distinctive, and well-known symbols of Amazon—well before any of the Defendants registered the domains amazoncash.org, amazonrecruiter.org, amazonishiring.org, amazonprofits.org, amazonwealth.org, and amzjobs.org.

107.    Defendants registered and used the domains amazoncash.org, amazonrecruiter.org, amazonishiring.org, amazonprofits.org, amazonwealth.org, and amzjobs.org with a bad faith intent to profit from the Amazon Trademarks based on a number of factors, including the fact that the domains are used in furtherance of a scheme to defraud consumers by deceiving them into believing Defendants' domains are affiliated with Amazon.

108.    The domains amazoncash.org, amazonrecruiter.org, amazonishiring.org, amazonprofits.org, amazonwealth.org, and amzjobs.org are confusingly similar to or dilutive of the Amazon Trademarks.

COMPLAINT - 25

109.     Amazon is entitled to actual damages under 15 U.S.C. § 1117(a), or in the alternative, statutory damages under 15 U.S.C. § 1125(d)(1).

110.     Amazon is entitled to have ownership of the domains amazoncash.org, amazonrecruiter.org, amazonishiring.org, amazonprofits.org, amazonwealth.org, and amzjobs.org transferred to them, or in the alternative to have those domains forfeited or cancelled.

111.     Amazon is further entitled to injunctive relief, as set forth in the Prayer for Relief below.  In addition to the significant harm that Defendants have caused to innocent jobseekers, Defendants' acts have caused irreparable injury to Amazon.  The injury to Amazon is and continues to be ongoing and irreparable.  An award of monetary damages cannot fully compensate Amazon for its injuries, and Amazon lacks an adequate remedy at law.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Amazon respectfully prays for the following relief:

A.     That the Court enter judgment in favor of Amazon on all claims;

B.     That the Court issue an order permanently enjoining Defendants, their officers, agents, representatives, employees, successors and assigns, and all others in active concert or participation with them, from:

(i)     Using the Amazon Trademarks in connection with any employment opportunity, membership program, or sale of goods or services;

(ii)    Registering domains that include, are confusingly similar to, or dilutive of, the Amazon Trademarks;

(iii)   Using any other indication of Amazon's brand in connection with any employment opportunity, membership program, or sale of goods or services;

COMPLAINT - 26

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104
206.622.3150 main · 206.757.7700 fax

(iv)    Making any statement of an affiliation or connection to Amazon in connection with any employment opportunity, membership program, or sale of goods or services; or

(v)    Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in the subparagraphs above;

C.    That the Court enter an order requiring Defendants to provide Amazon a full and complete accounting of all gross and net proceeds earned from innocent jobseekers, including an identification of those victims;

D.    That Defendants' profits earned from innocent jobseekers, as alleged in this Complaint, be disgorged pursuant to 15 U.S.C. § 1117(a);

E.    That Defendants be required to pay all actual damages which Amazon has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be trebled as provided for by 15 U.S.C. § 1117(a)–(b), or otherwise allowed by law;

F.    That, instead of actual damages, Defendants be required to pay the maximum amount of statutory damages for their infringement of the Amazon Trademarks pursuant to 15 U.S.C. § 1117(c);

G.    As this is an exceptional case, that Defendants be required to pay the costs of this action and the reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, or otherwise by law; and

H.    That the Court grant Amazon such other, further, and additional relief as the Court deems just and equitable.

COMPLAINT - 27

1

2

DATED this 10th day of April, 2019.

3

4                                           DAVIS WRIGHT TREMAINE LLP
                                            Attorneys for Amazon.com, Inc.

5

6                                           By  _s/ Bonnie E. MacNaughton_____
                                                Bonnie E. MacNaughton, WSBA #36110

7                                               _s/ James H. Wendell_____
                                                James H. Wendell, WSBA #46489

8

9                                               _s/ Sara A. Fairchild_____
                                                Sara A. Fairchild, WSBA #54419

10                                              920 Fifth Avenue, Suite 3300
                                                Seattle, WA 98104

11                                              Phone:  (206) 622-3150
                                                Fax: (206) 757-7700

12                                              Email: bonniemacnaughton@dwt.com
                                                       jamiewendell@dwt.com

13                                                     sarafairchild@dwt.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT - 28

# Exhibit 1







