UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROY ORON, an individual, et al.,<br><br>Defendants. | Case No. C19-523RSM<br><br>ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS |

This matter comes before the Court on a Motion to Dismiss brought by Defendants Rasheed Ali, Peter Bradford, and Cash Network LLC ("Cash Network Defendants"). Dkt. #70. The Cash Network Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). *Id.* Amazon argues, *inter alia*, that personal jurisdiction exists here because the Cash Network Defendants directed their efforts at Washington State when they "used a Washington-based web service provider, employed a Washington-based employee, and paid an affiliate marketer to send deceptive advertisements to over a million Washington phone numbers." Dkt. #80 at 7. Amazon argues against Rule 12(b)(6) dismissal in part by connecting the acts of these Defendants to those of other Defendants.

Given the nature of this Motion, the Court will focus on the facts as alleged by Amazon, supplementing with jurisdictional evidence as needed. Amazon's First Amended Complaint

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 1

alleges that Cash Network LLC, which is partly owned by Defendants Ali and Bradford, operates an online advertising network that helps advertisers source traffic for their websites. Dkt. #52 ("FAC"), ¶ 30.  Defendants Roy Oron, his business partner Maayan Marzan, and their company Clickomy Ltd. paid Cash Network to send web traffic to a site that allegedly used Amazon's brand to deceive consumers into purchasing the Oron Defendants' services. *See id.* at ¶¶ 4-6, 11.  To source this traffic, the Cash Network Defendants engaged affiliate marketers, including former defendant First Impression Interactive, Inc. ("FII"), to publish advertisements encouraging individuals to click on links or visit URLs. *See* FAC ¶¶ at 29, 32-38, 48, 62.  FII, for example, created and sent pre-recorded voicemail messages to millions of individuals directing them to visit a particular domain in order to register for an opportunity to work with Amazon. *See id.* at ¶¶ 29, 41, 48.  When individuals entered these domains in their browsers (or clicked on links in other affiliates' advertisements), the individuals were redirected to domains controlled by Cash Network. *See id*. at ¶ 49. Cash Network, in turn, sent the individuals to the Oron Defendants' Amazon-branded webpage. *Id*. at ¶ 54. Individuals who clicked on any link on the Amazon-branded page were taken to another webpage where they could purchase the Oron Defendants' services. *See id*. at ¶¶ 79-95.

Cash Network used the domains citlis.com, jocisc.com, ansmitt.com, and utrome.com to redirect individuals from the URLs FII provided in its voicemails (*e.g.*, amazonrecruiter.org) to the Oron Defendants' Amazon-branded website. *Id*. at ¶¶ 49-50 & n.5. Cash Network hosted these domains with Amazon Web Services ("AWS"), based in Washington State. *Id*. at ¶ 51.

Amazon, pointing to email exhibits, alleges that the Cash Network Defendants worked closely with Oron on the content of the fake Amazon-branded website.  The website purported to offer a "Work at Home Opportunity With Amazon" to individuals who paid "a small

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 2

enrollment fee" for a work-from-home "kit"—*i.e.*, the Oron Defendants' services. *Id*. at ¶¶ 71, 82, Ex. 1 at 3. In communications with Oron, Ali and Cash Network employees routinely referred to the website as the "Amazon advertorial" or simply "Amazon." *Id*. at ¶¶ 59-60, 63. Cash Network advised Oron how to improve the website to increase the number of individuals who purchased the Oron Defendants' offer. For example, a Cash Network employee allegedly informed Oron that some of the fake comments on the website needed to be updated to match the Amazon-branded offer, and Oron responded a few days later that he had made the update. *Id*. at ¶ 61.

Amazon alleges that a feature of the "Amazon advertorial" was incorporating individuals' physical locations based on their IP addresses. *Id.* at ¶ 70. The page's heading read in large font, "Work at Home Opportunity with Amazon" in the specific city where the individual was located. *Id*. Amazon argues that this feature inevitably led to the targeting of individuals in Washington State with references to their locality.

Amazon points to exhibits showing Cash Network's involvement in the Amazon advertorial, including an email from a Cash Network email address encouraging affiliates to compete for a cash prize to push this scheme, with a screenshot of the top portion of the Amazon advertorial, with Amazon's trademarks and brand clearly visible. Dkt. #80 at 11 (citing Dkt. #82 ("Fairchild Decl."), Ex. F (filed under seal)).

Amazon alleges that one of the Cash Network employees who helped drive traffic to the Oron Defendants' website worked out of Seattle, Washington, based on its own investigation. *See* Fairchild Decl. at Exs. C, D, & F at 3; Dkt. #84 ("Gooding Decl."), ¶¶ 3-4. Both Ali and Bradford appear to have communicated with their Washington employee about the Oron Defendants' campaigns. *See, e.g.,* Fairchild Decl. at Ex. D. Defendants admit on Reply that

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 3

this employee operated out of Seattle, but state that his "time at Cash Network was not memorable." Dkt. #88 at 2–3. Amazon has numerous other allegations of Ali and Bradford's connection to this campaign/scheme.

Amazon brings claims against these Defendants for contributory liability for the trademark infringement of certain other Defendants ("[t]hey provided a service to Oron, Marzan, and Clickomy with actual or constructive knowledge that their service was being used for these violations, and they directly controlled and monitored the instrumentality Oron, Marzan, and Clickomy used for the violations") and contributory liability and agency liability for the actions of certain *other* Defendants ("[t]hey had actual or constructive knowledge of First Impression's, Giles', and Brown's false advertising, and they directly controlled and monitored the instrumentality First Impression, Giles, and Brown used to falsely advertise opportunities to work with Amazon…" "they intentional induced this false advertising…." "[t]hey, as principal, manifested assent to First Impression, their agent, that First Impression act on their behalf and subject to their control, and First Impression agreed to so act"). Dkt. #52 at 31–34. Amazon alleges that "Defendants Ali and Bradford are liable based on their direct involvement in the activities alleged in the FAC," but that they are "also liable for the acts of Cash Network alleged in the FAC because they had the right and ability to supervise, direct, and control the wrongful conduct alleged in the FAC and derived a direct financial benefit from that wrongful conduct." *Id*. at 34.

Defendants point out that neither Ali or Bradford reside in the State of Washington and that Cash Network LLC has its principal place of business in Murray, Utah. Dkt. #70 at 2. They allege that their employees work remotely from North Carolina or out of Cash Network's

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 4

office in Utah. *Id*. Defendants allege that "[n]either Ali, Bradford, nor Cash Network has ever directed any of Cash Network's affiliates to advertise in the State of Washington." *Id.*

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154, (9th Cir. 2006) (citing *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003)). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citing *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citations omitted)). Moreover, for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff. *Id*.

The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Id.* Jurisdiction can be established by general or specific jurisdiction. The Ninth Circuit relies on a three-prong test for analyzing a claim of specific personal jurisdiction: (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802, 2004 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id.* If the plaintiff fails to satisfy either of

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 5

these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* The reasonableness determination requires the consideration of several factors, including (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1088 (9th Cir. 2000), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006).

Resolving all disputed facts in favor of plaintiff Amazon, the Court finds that Amazon's allegations connecting these Defendants with the alleged scheme are sufficient to establish a prima facie showing of personal jurisdiction. Amazon has presented facts, the result of significant investigation, which tend to show that each of these Defendants was in control of businesses and websites directly affiliated with this scheme or directed individuals or businesses in how to conduct this scheme. Amazon has presented undisputed evidence that the individual Defendants and Cash Network interacted with an employee located in Washington State. There is prima face evidence that this scheme targeted individuals in all 50 states,

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 6

including this one. This scheme also clearly used AWS, located in Washington State and injured Amazon in Washington State. Amazon's causes of action here undeniably relate to Defendants alleged forum-related activities.

Defendants' contention that "Cash Network is simply a network marketing company that connects advertisers who have offers with affiliates who specialize in generating traffic" Dkt. #88 at 2, is contradicted by the email evidence Amazon has presented demonstrating Defendant's knowledge that the scheme was using Amazon's name and brand. Defendants have otherwise failed to demonstrate that an exercise of personal jurisdiction would be unreasonable. After reviewing the seven factors from *Bancroft* above, the Court finds this exercise of jurisdiction reasonable and consistent with due process. Questions about Amazon's ultimate ability to prove liability are properly resolved on summary judgment or at trial.

**B. Motion to Dismiss for Failure to State a Claim**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

To state a plausible claim of contributory liability under the Lanham Act, Defendants argue that "Amazon must plead facts sufficient to give rise to a plausible inference that the Cash Network Defendants either (a) intentionally induced another to infringe; or (b) continued to supply services to one who they knew was engaging in trademark infringement or false advertising." Dkt. #70 at 12 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942 (9th Cir. 2011)).

Here, Amazon has not only adequately alleged that these Defendants "continued to supply services to one who they knew was engaging in trademark infringement or false advertising," but has attached email exhibits appearing to support those allegations. Defendants are seen in these exhibits discussing the Amazon advertorial by name. It certainly appears plausible that they knew the companies they were working with were not legitimately tied to Amazon. As Amazon succinctly explains in their Response:

> The Cash Network Defendants also knew the Oron Defendants lacked any authorization to use Amazon's trademarks and brand. Ali specifically stated to FII that the website had "an amazon style advertorial the <u>*advertiser [Oron] created*</u>." [FAC] ¶ 34 (emphasis added). Cash Network knew the Oron Defendants were using Amazon's brand to sell a business opportunity that had no connection to Amazon. In fact, the offer was called "Money Sucking Website," *id*. ¶ 56, and some affiliates specifically requested not to use the Amazon-branded advertorial to promote it, *id*. ¶ 60. Further, the advertorial—which Cash Network actively reviewed, *see id*. ¶ 61—expressly stated, "We are not affiliated in any way with Amazon." *Id*. ¶ 76.

Dkt. #80 at 15. Amazon further alleges that Cash Network directly controlled the distribution and marketing of the Oron Defendants' infringing website. *See* FAC ¶¶ 29-33, 66. Amazon has also adequately alleged that these Defendants had actual or constructive knowledge that FII

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 8

was infringing Amazon's brand and directly controlled and monitored FII's activity related to this scheme sufficient to state a claim for agency liability. Amazon need not establish liability at this early stage or prove its theory of agency liability. Taking all facts alleged in the First Amended Complaint as true, and making all inferences in the light most favorable to the non-moving party, Amazon's claims are plausible on their face and contained sufficiently-detailed allegations to satisfy the *Twombly/Iqbal* test.

### C. Motion to Seal

Amazon has also filed a Motion to Seal in conjunction with their Response brief, although they do not believe grounds to seal exist. Dkt. #78. Amazon has filed a redacted version of their brief referencing "the number of affiliates Cash Network engaged as part of the Campaign and the total amount Cash Network paid those affiliates to establish the Cash Network Defendants' intentional acts supporting personal jurisdiction," and submitted exhibits under seal "because they include information and an exhibit from a document that Defendants… insist contains information qualifying as confidential under the Stipulated Protective Order ('Order') in this case." *Id*. at 1, 3.

"There is a strong presumption of public access to the court's files." LCR 5(g). "Only in rare circumstances should a party file a motion, opposition, or reply under seal." LCR 5(g)(5). Normally the moving party must include "a specific statement of the applicable legal standard and the reasons for keeping a document under seal, with evidentiary support from declarations where necessary." LCR 5(g)(3)(B). However:

> Where parties have entered a litigation agreement or stipulated protective order (see LCR 26(c)(2)) governing the exchange in discovery of documents that a party deems confidential, a party wishing to file a confidential document it obtained from another party in discovery may file a motion to seal but need not satisfy subpart (3)(B) above. Instead, the party who designated the

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 9

> document confidential must satisfy subpart (3)(B) in its response to the motion to seal or in a stipulated motion.

LCR 5(g)(3).  A "good cause" showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions.  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (internal citations omitted).  For dispositive motions, the presumption may be overcome by demonstrating "compelling reasons."  *Id.*; *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1135-36 (9th Cir.2003).  Applying the "compelling reasons" standard, the Ninth Circuit has found appropriate the sealing of documents attached to a motion for summary judgment when court records could be used "as sources of business information that might harm a litigant's competitive standing."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016), *cert. denied*, 137 S.Ct. 38 (2016).

Defendants argue that this information should remain sealed because it was "taken from a confidential settlement communication" and because it is confidential commercial information protected by the Stipulated Protective Order entered in this case.  Dkt. #92 at 2.  Defendants incorrectly imply that Amazon must demonstrate "some crucial need for this information to support its position in the litigation."  *Id.*  Defendants discuss "the interest in maintaining the confidentiality of settlement discussions, to further the kinds of open discussion that is required to meaningfully advance disputes toward out of court resolution."  *Id.* at 5.  Defendants do not adequately explain how the information at issue in this Motion was related to settlement discussions.  Defendants do not adequately explain how public knowledge of this information would cause commercial harm to Cash Network.

On Reply, Amazon argues that the information came from a document responsive to a subpoena Amazon previously served on Cash Network, that the document was not itself a settlement communication, and that Defendants should not be permitted to "hide discovery

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 10

materials from public view by appending them to a settlement letter." Dkt. #96 at 4. Amazon argues that these facts go to the merits of its opposition to the Motion to Dismiss for lack of personal jurisdiction. *Id.* at 5. Amazon also argues that the information is not covered by the Stipulated Protective Order because that defines "Confidential" material as "personally identifiable information of a designating party's customers; and sensitive financial account information of the designating party, such as account numbers and account statements." *Id.* at 2 – 3 (citing Dkt. #31 at 2).

The Court agrees with Amazon's reasoning. These files are not clearly covered by the Stipulated Protective Order or protected as confidential settlement information. Given the strong presumption of public access to these files, the Court finds that Defendants have failed to demonstrate compelling reasons to seal this information filed in response to a dispositive motion.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

1) The Cash Network Defendants' Motion to Dismiss, Dkt. #70, is DENIED.
2) Amazon's Motion to Seal, Dkt. #78, is DENIED. The Court DIRECTS the Clerk to unseal Dkts. #81 and #82 filed by Amazon.

DATED this 20th day of October, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING CASH NETWORK DEFENDANTS' MOTION TO DISMISS - 11